UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADMINICOR SERVICES, INC, ET AL,

    Plaintiffs,

v.                                 Case No.: 8:25-cv-1929-MSS-NHA

COMMISSIONER OF INTERNAL REVENUE,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

The United States moves to dismiss the Amended Complaint for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim. Doc. 18. I respectfully recommend that the Court grant the United States' motion, in part. Specifically, I recommend that the Court dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Alternatively, I provide separate and independent grounds on which the Court may dismiss each individual claim.

## I.    Summary

Plaintiffs sue the Internal Revenue Service (IRS), claiming that it followed improper procedures in determining that Plaintiff Adminicor Services, Inc.'s employee stock ownership plan (ESOP) did not qualify for tax exemption. Doc. 17.  In 2011, Plaintiffs established an ESOP that they believed

1

qualified for tax exemption under the Internal Revenue Code. Am. Compl. (Doc. 17) ¶¶ 18–19. Years later, the IRS determined that the ESOP did not meet—and has never met—the requirements for tax-exempt status and directed Plaintiffs to pay back taxes for the years they did not file. Am. Compl. (Doc. 17) ¶ 30; Doc. 17-1 pp. 2–10. Rather than pay the taxes, Plaintiffs appealed the determination to the Tax Court and filed the present action. Am. Compl. (Doc. 17); Doc. 18 p. 3 and n.2.

Here, they argue that the IRS violated the Administrative Procedures Act (APA) in two ways.[1] Am. Compl. (Doc. 17) ¶¶ 45–78. In Count I, Plaintiffs allege that the IRS's explanation for disqualifying Plaintiffs' ESOP from tax-exemption articulated a new "rule" for which the IRS was required—but failed—to seek notice-and-comment before implementing. Am. Compl. (Doc. 17) ¶¶ 45–59. In Count II, Plaintiffs argue that the IRS's disqualification of Plaintiff's ESOP was arbitrary and capricious, because it contradicted prior IRS determinations without providing a reasoned explanation for the reversal. Am. Compl. (Doc. 17) ¶¶ 60–78. Plaintiffs seek declaratory and injunctive relief only. Am. Compl. (Doc. 17) p. 24.

---

[1] The Amended Complaint also brings a third claim (Count III), but Plaintiffs have voluntarily withdrawn that claim. Doc. 23 p. 10.

In its motion to dismiss (Doc. 18), the IRS claims that this Court lacks jurisdiction to hear the action and that, in any event, Plaintiffs fail to state a cognizable legal claim.

Upon review of the record, I agree that the Amended Complaint is due to be dismissed. First, this Court lacks jurisdiction to decide Plaintiffs' claims. Next, each claim suffers from an additional defect that independently warrants its dismissal.

Regarding jurisdiction, although styled as a procedural challenge to the IRS's adoption of a "rule," this lawsuit, at heart, seeks to prevent the IRS from assessing and collecting taxes. Therefore, the Anti-Injunction Act and the Declaratory Judgment Act prohibit the Court from exercising jurisdiction over the matter.

Additionally, Count I fails to state a claim, because Plaintiffs do not plead facts sufficient to demonstrate that the IRS created a "rule" that required notice-and-comment. Count II embodies shotgun pleading and may be dismissed on those grounds. And, finally, Plaintiffs do not contest the Court's dismissal of Count III. Doc. 23 p. 10.

## II.    Background

The Amended Complaint (Doc. 17) alleges:

Plaintiff Adminicor Services, Inc. was established as an S-Corporation in 2011.[2] Am. Compl. (Doc. 17) ¶ 18. Upon its incorporation, Adminicor established an employee stock ownership plan (the Adminicor ESOP). Am. Compl. (Doc. 17) ¶ 23. An ESOP is "a type of pension plan intended to encourage employers to make their employees stockholders." *Steinman v. Hicks,* 352 F.3d 1101, 1102 (7th Cir. 2003); *see also* 29 U.S.C. § 1107(d)(6)(A) (an ESOP is "a stock bonus plan [for employees] . . . which is designed to invest primarily in qualifying employer securities[.]").

Congress has encouraged the creation of ESOPs by "giving tax breaks and by waiving the duty ordinarily imposed on trustees by modern trust law . . . to diversify the assets of a pension plan." *Steinman,* 352 F.3d at 1103 (citations omitted). Thus, under the Internal Revenue Code (IRC), a trust associated with a qualified ESOP is exempt from taxation, 26 U.S.C. § 501(a), and ESOP participants are not taxed on contributions until the ESOP's benefits are distributed, 26 U.S.C. § 402(a). Section 401(a) lists the prerequisites for a trust to qualify for preferential tax treatment under section 501(a). For example, 26 U.S.C. § 401(a)(28)(C) requires that an independent

---

[2] "Generally, an S corporation is defined as a small business corporation . . . [that] is not subject to Federal income taxes . . . . [because] income flows to its shareholders" and is taxed to them instead. *Weekend Warrior Trailers, Inc. v. Comm'r,* 101 T.C.M. (CCH) 1506 (T.C. 2011) (citations omitted).

4

appraiser value the employer's non-publicly-traded securities. Regulations further mandate certain qualifications for the appraiser and certain documentation for the appraisal. *See* 26 U.S.C. § 401(a)(28)(C); 26 U.S.C. § 170(f)(11)(E)(ii); 26 C.F.R. § 1.170A-17.

Adminicor relied on ESOP advisor Lex J. Byers in creating the Adminicor ESOP. Am. Compl. (Doc. 17) ¶ 23. Byers and his company, IFP Capital Group, created "proprietary ESOP documentation" that they sold to customers, like Adminicor, that were establishing ESOPs. Am. Compl. (Doc. 17) ¶ 23, 26. The IRS initially afforded the Adminicor ESOP (and, according to Plaintiff, other ESOPs established using Byers's system) preferential tax treatment under Section 501(a). Am. Compl. (Doc. 17) ¶¶ 21, 27.

In 2016, however, the IRS investigated Byers and began to audit ESOP plans associated with his proprietary ESOP system. Am. Compl. (Doc. 17) ¶ 29. On January 21, 2021, the IRS issued formal Notices of Deficiency to Adminicor and two of Adminicor's principals (Plaintiffs Benjamin Moricz and Paul H. Jaworski[3]), finding each Plaintiff owed taxes to the IRS for tax years 2017, 2018 and/or 2019. Am. Compl. (Doc. 17) ¶¶ 33, 35; Doc. 17-1 p. 15; Doc. 17-7. Plaintiffs filed petitions in Tax Court concerning the notices of deficiency

---

[3] Plaintiff Ann F. Jaworski is married to, and filed taxes jointly with, Paul H. Jaworski. Doc. 17-7 p. 23.

for the 2017, 2018, and 2019 tax years.[4] Am. Compl. (Doc. 17) ¶ 35. *Moricz v. Comm'r*, No. 14944-21 (T.C., filed Jul. 18, 2021); *Jaworski v. Comm'r*, No. 14945-21 (2018 year) (T.C., filed Jul. 18, 2021); and *Jaworski v. Comm'r*, No. 37958-21 (2017 and 2019 years) (T.C., filed Apr. 28, 2021).

On August 8, 2023, the IRS mailed a letter "proposing to disqualify" the Adminicor ESOP (meaning that it would no longer be tax exempt under IRC Section 501(a)) and enclosing a Form 886-A[5] to explain the proposed disqualification. Doc. 17-1 p. 11. The Form 886-A explains that the IRS has three grounds for the proposed disqualification of the Adminicor ESOP. Doc. 17-1 pp. 15–58.

First, the IRS noted that Section 401(a)(3) of the Internal Revenue Code mandates that the ESOP satisfy the requirements of section 410, which relate to participation standards. Doc. 17-1 p. 58. In turn, Section 410(a)(1)(A)(ii)[6]

---

[4] The case filed by Adminicor, *Adminicor Services, Inc. v. Comm'r*, No. 14876-21 (T.C., filed Apr. 28, 2021), concerning the 2017 and 2019 tax years has been resolved "by stipulated decision that no deficiencies or penalties were due for either year entered on Mar. 8, 2024." Doc. 18 n. 2. All other cases are pending.

[5] "Form 886A . . . is sometimes provided to taxpayers in order to explain actions taken or penalties imposed by the IRS." *United States v. Colliot*, No. AU-16-CA-01281-SS, 2017 WL 6348129, at *2 (W.D. Tex. Dec. 15, 2017)

[6] 26 U.S.C. § 410(a)(1)(A) ("A trust shall not constitute a qualified trust under section 401(a) if the plan of which it is a part requires, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of . . . (i) the date on which the employee attains the age of 21; or (ii) the date on which he completes 1 year of service.").

prohibits a plan from conditioning an employee's participation in the ESOP on his having performed more than one year of service. Contrary to this requirement, the Adminicor ESOP required an employee to have completed five years of service to participate. Doc. 17-1 p. 58. Thus, the IRS found that, from its inception, the plan violated the terms of IRC section 401(a)(3), because it violated the minimum participation standards of IRC section 410. Doc. 17-1 p. 58.

Second, the IRS asserted that the Adminicor ESOP failed to meet the requirements of Section 401, because Adminicor failed to make "recurring and substantial contributions out of profits." Doc. 17-1 p. 58. Section 401(a)(1) requires "contributions [be] made to the [ESOP] trust by such employer, or employees, or both, . . . for the purpose of distributing to such employees . . . the corpus and income of the fund accumulated by the trust . . . ." The regulations further specify that "merely making a single or occasional contribution out of profits for employees does not establish a plan of profit-sharing. To be a profit-sharing plan, there must be recurring and substantial contributions out of profits for the employees." 26 C.F.R. § 1.401-1(b)(2). The IRS noted that Adminicor had possibly contributed $20,000 to the plan in 2011 but had failed to make any contributions for tax years 2012 through 2021. Doc. 17-1 pp. 55–56.

The IRS further noted, as part of this "issue," that the possible contribution of $20,000 in 2011 should have been used to make payments on a $20,000 loan that was made from Adminicor to the Adminicor ESOP to allow the Adminicor ESOP to purchase company shares. Doc. 17-1 pp. 55–56. The IRS found that the ESOP operation plan stated that Adminicor "shall make a contribution to [the Adminicor ESOP] in cash sufficient to pay any currently maturing obligations" on a loan, but that Adminicor, in violation of its own plan's terms, failed to make any payments to the Adminicor ESOP to cover the obligations on the $20,000 loan. Doc. 17-1 p. 56. The IRS found that Adminicor's failure to make a cash contribution to repay the loan disqualified the plan from tax exemption, because Section 401(a) requires that the plan follow its written terms. Doc. 17-1 p. 56; *see also* 26 C.F.R. § 1.401-1(a)(2).

Third, the IRS concluded that the Adminicor ESOP was not entitled to preferential tax treatment, because valuations of employer securities were not completed by an independent, qualified appraiser. Doc. 17-1 pp. 56–58. Under Section 401(a)(28)(C), "all valuations of employer securities which are not readily tradable on an established securities market with respect to activities carried on by the plan [must be performed] by an independent appraiser." The section further states that "the term 'independent appraiser' means any appraiser meeting requirements similar to the requirements of the regulations prescribed under section 170(a)(1)." 26 U.S.C. §401(a)(28)(C).

Section 170, in turn, governs donations to charitable organizations. Accordingly, the accompanying Treasury Regulations reference "donors" and "donees" and "gifts."[7] 26 C.F.R. § 1.170A-13(c)(5). Those Treasury Regulations specify that "[a] party to the transaction in which the donor acquired the property being appraised" cannot be a qualified appraiser, 26 C.F.R. § 1.170A-13(c)(5)(iv)(B), and that a party employed by the entity cannot be a qualified appraiser, 26 C.F.R. § 1.170A-13(c)(5)(iv)(D). Applying 26 C.F.R. § 1.170A-13(c)(5)(iv)(B) and (D) the IRS found that the Adminicor ESOP appraisers, which included Byers, could not be independent appraisers. Doc. 17-1 p. 56. The IRS explained that, because Adminicor contracted with Byers to perform so many services, Byers was employed by Adminicor and was functionally a "party to the transaction" in which the non-publicly-traded securities he was appraising were sold to the Adminicor ESOP. Doc. 17-1 p. 56. Additionally, the IRS found that Byers did not meet the minimum qualification standards to serve as an appraiser. Doc. 17-1 p. 57 (referencing the minimum education and experience requirements set forth in 26 C.F.R. sections 1.170-13 and 1.170-17(b)).

---

[7] This appears to be the reason Plaintiffs claim that the IRS classified Byers as a "donee." As explained here, Plaintiffs' interpretation is not consistent with the plain language of the determination they challenge.

9

For these three reasons, the August 8, 2023 Form 886-A concluded that the Adminicor ESOP was "not qualified under I.R.C. § 401 (a) effective July 31, 2011 and all subsequent years." Doc. 17-1 p. 57. The IRS declared the Adminicor ESOP no longer tax exempt and, because it was no longer tax exempt, instructed it to file Form 1041 (U.S. Income Tax Returns for Estates and Trusts) for the "open" tax years,[8] and pay the consequential taxes and penalties. Doc. 17-1 p. 58.

On January 12, 2024, the IRS mailed a "final non-qualification letter" to Adminicor, stating that the Adminicor ESOP "does not meet the requirements of Internal Revenue Code (IRC) Section 401(a) effective for plan year ending December 31, 2011, and subsequent plan years. The trust is not tax exempt under IRC Section 501(a) for the trust years ending with or within the affected plan years and subsequent trust years." Doc. 17-1 p. 2. The letter states that, should Adminicor disagree with the finding, it could "petition the U.S. Tax Court for a declaratory judgment on the qualification of this plan" within 90 days. Doc. 17-1 p. 2.  Adminicor did just that, filing *Adminicor Services, Inc. ESOP et al. v. Comm'r*, No. 5793-24 (T.C., filed Apr. 11, 2024). Doc. 18 n.2.

---

[8] Under Section 6501 of the Internal Revenue Code, the IRS generally has a specific timeframe to assess additional taxes or audit a return. An "open" year means a tax year for which that timeframe has not yet expired.

10

Then, on July 22, 2025, Plaintiffs filed this action. Doc. 1. The Amended Complaint asserts that the IRS's position in the August 8, 2023 Form 886-A represents a rule Plaintiffs call the "Byers Rule," which mandates principal payments on ESOP loans, mandates retroactive tax return (Form 1041) filings, recharacterizes non-cash stock sales as "donations" for purposes of determining the qualification of an appraiser, and disqualifies any Byers-created ESOP that additionally used Byers as an appraiser. Am. Compl. (Doc. 17) ¶ 40. Plaintiffs claim that the "Byers Rule," although never "published . . . as formal guidance or regulation," nonetheless imposes "substantive obligations on an entire class of S-corporation ESOPs" (those ESOPs created with Byers's system). Am. Compl. (Doc. 17) ¶ 40.

In Count I, Plaintiffs claim that the IRS violated 5 U.S.C. § 553 (part of the APA)—which requires that an agency provide notice and solicit comment before adopting a "legislative rule"—because the IRS did not provide notice and solicit comment before adopting the "Byers Rule." Doc. 17 ¶¶ 45 –59.

In Count II, Plaintiffs claim that the IRS acted arbitrarily and capriciously, in violation of the APA, when it disqualified the Adminicor ESOP, because the decision was a reversal of the IRS's former determinations, practices, and/or written regulations, Am. Compl. (Doc. 17) ¶¶ 14, 21, 25, 33 and because the IRS failed to provide a reasoned explanation for doing it, *id.* ¶¶ 60–78.

11

In Count III, Plaintiffs additionally alleged that the IRS violated the Congressional Review Act in adopting the "Byers Rule." Am. Compl. (Doc. 17) ¶¶ 79–83. In their response to Defendant's motion to dismiss, however, Plaintiffs agreed to dismiss this claim without prejudice. Doc. 23 p. 10. The Court, therefore, need not decide Defendant's motion as to Count III.

Plaintiffs seek only non-monetary relief: "[a] declaration that the ["]Byers Rule["] is an unlawful agency rule issued without compliance with the APA; . . . [a] declaration that Defendant IRS exceeded its statutory authority in applying the ["]Byers Rule["]  without notice-and-comment rulemaking; . . . [a] declaration that Defendant IRS's actions were arbitrary, capricious, and unlawful under the APA; . . . [v]acatur of the ["]Byers Rule["]  as an invalid legislative rule and an order against defendant for this plaintiff and all similarly-situated plaintiff[]s . . . who utilized Byers as its ESOP Advisor to set up the same or similar retirement plan known as an S-ESOP; . . . [i]njunctive relief prohibiting Defendant IRS from enforcing the ["]Byers Rule["]  against Plaintiffs or similarly situated S-ESOP sponsors." Am. Comp. (Doc. 17) p. 24.

### III.    Issues Presented

Defendant responded to the Amended Complaint by filing the present motion to dismiss. Doc. 18. Defendant argues both that the Court may not hear the case and that Plaintiffs' claims lack merit.

12

First, Defendant argues that the Court lacks jurisdiction over this lawsuit, because it does not fall within the APA's narrow waiver of sovereign immunity. Defendant explains that the APA permits judicial review over only (1) a "final agency action," (2) "for which there is no other adequate remedy in a court," (3) when no other statute forbids the relief sought.  5 U.S.C. §§ 702, 704. But here, Defendant argues, (1) the challenged action is not a "final agency action," (2) Plaintiffs may seek an adequate remedy in a court (by challenging Defendant's decision to disqualify the Adminicor ESOP in Tax Court, or, after paying the taxes, filing a refund suit), and (3) the relief Plaintiffs seek is expressly forbidden by the Anti-Injunction Act and the Declaratory Judgment Act. Doc. 18 pp. 9–18.

Second, Defendant argues that, even if the Court had the power to decide the case, Plaintiffs fail to state a viable claim. Defendant claims Count I is insufficient because Plaintiffs fail to plead facts showing that the "Byers Rule" is a "rule" that required notice and comment. Doc. 18 pp. 19–24. Defendant argues that Count II is insufficient because Plaintiffs fail to show that the decision to audit and assess taxes on the Adminicor ESOP was non-discretionary, as is required for such a claim, and fail to show that the IRS provided no explanation for its decision.

Plaintiffs oppose the motion to dismiss. Doc. 23. Defendant has replied to the opposition. Doc. 27.

## IV.    Motion to Dismiss for Lack of Jurisdiction

"Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000) (citing *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999)). And, federal courts have an "independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020).

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A defendant challenging jurisdiction can mount either a "facial attack" or a "factual attack." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990).

A "facial attack" challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (citations omitted). Conversely, a Court deciding a "factual attack" may look beyond the pleadings at extrinsic evidence, and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Kennedy*, 998 F.3d at 1230 (quoting *Lawrence*, 919 F.2d at 1529). In deciding factual

14

attacks to jurisdiction, a plaintiff's allegations are not accepted as true. *Lawrence*, 919 F.2d at 1529.

Defendant mounts a facial challenge to the Amended Complaint, arguing that Plaintiffs bring claims to which the United States is immune from suit. In examining this facial challenge, the Court is limited to reviewing Plaintiffs' allegations in the Complaint and the Complaint's attachments.  It is "almost axiomatic that a plaintiff bears the burden of establishing a prima facie case of personal jurisdiction." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021).

A federal court lacks subject matter jurisdiction to decide a case brought against a sovereign entity that is immune from suit. *F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature. Indeed, the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."). Under the doctrine of sovereign immunity, the United States of America, as a sovereign, is immune from suit unless it has expressly consented to be sued through legislation waiving that sovereign immunity. *United States v. Sherwood,* 312 U.S. 584, 586 (1941).

Congress has expressly permitted certain suits against the United States in the APA. The APA states, in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review

15

thereof." 5 U.S.C. § 702. But this waiver is subject to certain limitations. First, the plaintiff must "seek[ ] relief other than money damages." 5 U.S.C. § 702. Second, the plaintiff must challenge a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. And, finally, the relief the plaintiff seeks must not be "expressly or impliedly forbid[den]" by "any other statute." 5 U.S.C. § 702.

Here, Defendant claims that Plaintiffs' suit falls outside of the APA's narrow waiver of sovereign immunity for three reasons: (a) Plaintiffs challenge no "final agency action," (b) Plaintiffs have an adequate remedy in another court, and (c) Plaintiffs' action is prohibited by the Anti-Injunction Act and Declaratory Judgment Act.

a. No Final Agency Action

Starting with Defendant's argument as to whether Plaintiffs challenge a "final agency action," the APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). And, "[a]s a general matter, two conditions must be satisfied for [an] agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–

16

78 (1997) (internal citation omitted) (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

First, Defendant and Plaintiffs have different views on *what* Plaintiff is challenging. Defendant reads Plaintiff's complaint to challenge (a) the IRS's decision to audit Byers's clients, and (b) the "IRS's decision to disqualify such plans that do not meet the requirements of the Code and regulations thereby disallowing various claimed tax benefits." Doc. 18 p. 8. Defendant argues neither of these is a "final agency action." Doc. 18 pp. 8–14. Plaintiff takes the position that it is challenging a "specific, identifiable set of written agency actions—the August 9, 2023 Form 886-A Explanation of Items, the January 12, 2024 Final Non-Qualification Letter . . . and the January 21, 2021 Notices of Deficiency . . . —that collectively constitute and enforce a de facto legislative rule . . . ." Doc. 23 p. 5; *see also* Doc. 23 p. 17.

As discussed below, Plaintiffs fail to demonstrate that there is a "Byers Rule." In essence, Plaintiffs challenge the IRS's determination that the Adminicor ESOP is not tax exempt, for the reasons stated in the August 9, 2023 Form 886-A. The question, then, is whether this decision is a "final agency action."

The January 12, 2024 Final Non-Qualification Letter is, indeed, the consummation of the IRS's decision-making process. As it explains, the letter is the IRS's "final" determination that the Adminicor ESOP "does not meet the

17

requirements of Internal Revenue Code (IRC) Section 401(a) . . . for plan year ending December 31, 2011 and subsequent plan years" and concludes the IRS's inquiry into the plan, setting forth the next steps Plaintiffs may take in the U.S. Tax Court. Doc. 17-1 p. 2. And, the letter is one from which legal consequences will flow. The finding that the Adminicor ESOP is not tax exempt for prior years obligates Plaintiff to pay taxes. Doc. 17-1 p. 5. Indeed, Defendant concedes that the January 12, 2024 Final Non-Qualification Letter is a "final action." Doc. 18 p. 14 ("[The letter] is a final action, but not a 'final rule' for purposes of the APA or the CRA, as discussed further below.").

Thus, the decision Plaintiffs challenge is a final agency action as required for purposes of the APA's sovereign immunity waiver.

b. Adequate Remedy in Court

Another prerequisite to the APA's sovereign immunity waiver is that a plaintiff have "no other adequate remedy in a court." 5 U.S.C. § 704. The requirement exists so that "the general grant of review in the APA" does not "duplicate existing procedures for review of agency action" or "provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (citation omitted).

When deciding whether an alternative remedy is "adequate" a court must consider whether it offers the "same genre" of relief as the APA. *Garcia*

18

*v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (citation omitted). Thus, where a statute outside the APA provides for *de novo* review of an agency decision in federal district court, that relief is generally deemed to be "adequate" to preclude any immunity waiver under the APA. *See, e.g.*, *Hinojosa v. Horn*, 896 F.3d 305, 311-13 (5th Cir. 2018) (per curiam) (requiring plaintiffs to challenge passport denial under 8 U.S.C. § 1503, not the APA, because it "provides a direct and guaranteed path to judicial review"); *Gulf Cost Mar. Supply, Inc. v. United States*, 867 F.3d 123, 131 (D.C. Cir. 2017) (holding that the Federal Alcohol Administration Act displaces the APA because it provides for judicial review of alcohol-permit revocations); *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016) (concluding that Title VII provides adequate remedy for federal employment discrimination claim). Importantly, although the alternative remedy "need not provide relief identical to relief under the APA," *Vilsack*, 563 F.3d at 522, a remedy is inadequate if it offers only "doubtful and limited relief." *Bowen*, 487 U.S. at 901.

Here, Defendant argues that Plaintiffs have adequate court remedies, because they and may challenge their tax obligations by either petitioning the Tax Court or by paying the taxes and then filing a refund suit pursuant to 26 U.S.C. § 7422, either in this Court or the U.S. Court of Federal Claims. Doc. 18 pp. 15–16. Plaintiffs respond that these remedies fall short of "adequate

19

remedies" because, *inter alia*, they fail to offer de novo review.[9] Doc. 23 pp. 24–27.

The Final Non-Qualification Letter lays out the paths through which Plaintiffs may contest it. The Letter states that, if Plaintiffs disagree with the finding of non-qualification they can "petition the U.S. Tax Court for a declaratory judgment on the qualification of [the] plan." Doc. 17-1 pp. 2, 7. Additionally, "[i]nstead of going to Tax Court, [Plaintiffs] may take [their] . . . case to the United States District Court or to the United States Court of Federal Claims. The District Court and the Claims Court hear tax cases only after [Plaintiffs] have fully paid the tax and filed a timely claim for refund." Doc. 17-1 p. 7.

The Court must examine whether either option constitutes an "adequate remedy," meaning relief that is not "doubtful and limited," *Bowen*, 487 U.S. at 901, and that is within the "same genre" of relief sought in this APA action, *Vilsack*, 563 F.3d at 523. Here, Plaintiffs assert a request for non-monetary

---

[9] Plaintiffs also respond that the IRS has imposed Notice of Deficiency only as to certain tax years (2017, 2018, and 2019) and "the Tax Court is a court of limited jurisdiction [that] is powerless to hear a challenge for any year where a deficiency has not been asserted." Doc. 23 pp. 13–14. But this argument is easily dismissed because it ignores that Plaintiffs can—and have—challenged the findings in the Final Non-Qualification Letter, which implicates *all* tax years that the Adminicor ESOP existed. *See* Doc. 17-1 (outlining Plaintiffs' options should they disagree with the finding); *Adminicor Services, Inc. ESOP et al. v. Comm'r*, No. 5793-24 (T.C., filed Apr. 11, 2024).

relief, namely, a determination that the IRS's finding that the Adminicor ESOP is not qualified for tax exemption and, therefore, that Plaintiffs owe taxes, is improper and unenforceable. Am. Comp. (Doc. 17) p. 24.

Starting with Plaintiffs' option to appeal the non-qualification finding to the Tax Court, 26 U.S.C. § 7476 provides that the Tax Court may make a declaration as to the IRS's determination regarding "the initial qualification or continuing qualification of a retirement plan," including "a pension, profit-sharing, or stock bonus plan described in section 401(a) or a trust which is part of such a plan." 26 U.S.C. § 7476. "[I]t is clear that Congress did not expect the Tax Court to conduct a trial *de novo* and make an independent examination of the facts to determine if the subject plan was qualified." *Tamko Asphalt Prods., Inc. v. Commissioner,* 71 T.C. 824, 837, 1979 WL 3836 (1979), *affd.* 658 F.2d 735 (10th Cir. 1981). Rather, the House report explaining section 7476 explained,

> The [Tax] Court is to base its determination upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination, or based upon any new matter which the Service may wish to introduce at the time of the trial. The Tax Court judgment, however, is to be based upon a redetermination of the Internal Revenue Service's determination and not on a general examination of the provisions of the plan or related trust.[10]

---

[10] This is consistent with Plaintiff's argument that the review the tax court will not allow discovery in the pending tax court action. Doc. 25 pp. 3–4.

H. Rept. 93–779 at 107, 108 (1974), 1974–3 C.B. 244, 350, 351; *see also* S. Rept. 93–383 at 114, 115 (1974), 1974–3 C.B. (Supp.) 80, 193, 194 (similar); *Porter v. Comm'r*, 130 T.C. 115, 120–21 (2008) ("Our Rules regarding declaratory judgments generally require these actions to be disposed of on the basis of the administrative record."). Because 26 U.S.C. § 7476 provides for a "limited" review of the IRS's determination, it is not an adequate alternate remedy to the present suit.

Moving to Plaintiff's option to pay the tax and then bring a "refund suit" in district court or the U.S. Court of Federal Claims, the mechanism for doing so is found in 26 U.S.C. § 7422. Although section 7422(a) provides only "for the recovery of any internal revenue tax," a plaintiff bringing a refund suit is also challenging the validity of the IRS's determination that the plaintiff owed a tax. 26 U.S.C. § 7422(a). In other words, Plaintiffs, in a refund suit, could seek a determination that the Adminicor ESOP is, in fact, tax exempt.

Thus, the mere fact that the present suit is styled as one for "declaratory relief" (which is unavailable in a refund suit) does not automatically render a refund suit "inadequate." Rather, a court must look to the relief the suit "principally seeks." *Harrison v. Internal Revenue Serv.*, No. 20-CV-828 (CRC), 2021 WL 930266, at *4 (D.D.C. Mar. 11, 2021); *Daines v. Internal Revenue Serv.*, No. 24-CV-1057, 2026 WL 1216053, at *3 (E.D. Wis. May 4, 2026) (looking to the "plaintiffs' core claim").

22

Here, at its core, Plaintiffs seek to nullify the IRS's determination that the Adminicor ESOP is not tax-exempt and to be released from the tax obligation that flows from that determination. This same relief is available in a refund suit, albeit *after* Plaintiffs pay the taxes. *Cohen v. United States*, 650 F.3d 717, 733 (D.C. Cir. 2011) ("[T]axpayer challenges to the validity of an individual tax [are] paradigmatic refund suits.").

Plaintiffs' prayer that the court enjoin enforcement of the "Byers Rule" against other similarly situated ESOPs, relief not available in a refund suit, does not change this conclusion, because such relief is also unavailable in the present suit for at least three reasons.

First, as discussed below, Plaintiffs fail to plead facts showing that the "Byers Rule" is anything but an application of preexisting laws and regulations to determine the tax status of the Adminicor ESOP. That is, it is not a rule at all, and thus has no authority over any other plan. Second, Plaintiffs lack standing to litigate the IRS's adjudications regarding other ESOPs. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted) ("[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Third, the Supreme Court has held that district courts cannot issue national injunctions. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Plaintiffs' request for relief not available in

23

this case does not support its need to proceed here rather than in another court where the relief is also unavailable.

Because Plaintiffs can seek an adequate remedy in court through a refund suit, the APA's sovereign immunity waiver does not apply here.

### c.  The Anti-Injunction and Declaratory Judgment Acts

The sovereign immunity waiver does not apply to this case for the separate and independent reason that the APA does not permit a suit against the United States if it seeks relief that another "statute . . . expressly or impliedly forbids." 5 U.S.C. § 702; *see also Schnapper v. Foley,* 667 F.2d 102, 108 (D.C. Cir. 1981) (stating the Government's immunity remains intact when "another statute expressly or implicitly forecloses injunctive [or declaratory] relief").

The Anti-Injunction Act (AIA) provides, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a).

The Declaratory Judgment Act (DJA) authorizes declaratory relief "except with respect to Federal taxes," 28 U.S.C. § 2201(a). "The breadth of the tax exception of [the DJA] is co-extensive with the effect of [the AIA]." '*Americans United" Inc. v. Walters,* 477 F.2d 1169, 1176 (D.C. Cir. 1973), *rev'd on other grounds sub nom. Alexander v. "Americans United" Inc.,* 416 U.S. 752 (1974); *Cohen v. United States*, 650 F.3d 717, 730–31 (D.C. Cir.2011) (en banc)

24

("What the AIA accomplishes by denying its application to 'any suit for the purpose of restraining the assessment or collection of any tax' the DJA accomplishes by an exception 'with respect to Federal taxes.' By nature, language is simultaneously robust and precise. Different verbal formulations can, and sometimes do, mean the same thing.").

Congress specifically recognized, in enacting the APA, that the statute would have no impact on the limitations and prohibitions in the AIA or DJA. H.R. Rep. No. 94–1656, at 12, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6132–33.

Defendant argues that the AIA and DJA prohibit this action because the action seeks "to thwart the collection of the taxes . . . or to prevent the IRS from assessing and collecting taxes and penalties from 'similarly situated' taxpayers nationally." Doc. 18 p. 16.

Again, the AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The purpose of the AIA is to "permit the United States to assess and collect taxes alleged to be due without judicial intervention." *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 7 (1962). Persons who dispute the assessment or collection of taxes, instead of bringing an action for injunctive or declaratory relief, must pay the disputed taxes and then file a suit for a refund pursuant to 26 U.S.C. § 7422.

25

To determine whether the AIA's prohibition applies, a court must consider a lawsuit's purpose, meaning "the action's objective aim—essentially, the relief the suit requests," through the "claims brought," "injuries alleged," and "relief requested." *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 217–218 (2021). "The Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation—or stated in the Act's language, when that injunction runs against the 'collection or assessment of [a] tax.'" *CIC Servs., LLC*, 593 U.S. at 218 (quoting 26 U.S.C. § 7421(a)).

In *Bob Jones University v. Simon,* 416 U.S. 725 (1974), the Supreme Court held that the AIA prohibited a plaintiff's action challenging the revocation of its tax-exempt status. Pursuant to a newly announced policy of denying tax-exempt status for private schools with racially discriminatory admissions policies, the IRS notified the plaintiff-university that it was going to revoke its status as a tax-exempt organization. *Bob Jones Univ.*, 416 U.S. at 725. The university sued the IRS to prevent revocation, "alleg[ing] irreparable injury in the form of . . . income tax liability and [] loss of contributions" and claiming that the revocation "would violate petitioner's rights to [] free exercise of religion, to free association, and to due process and equal protection of the laws." *Bob Jones Univ.*, 416 U.S. at 725. The Supreme Court found that the AIA precluded injunctive relief because an injunction would have impacted the IRS ability to collect the taxes that would have resulted from the university's

26

loss of its tax-exempt status. *Bob Jones Univ.*, 416 U.S. at 738–40. *see also "Americans United" Inc.,* 416 U.S. at 762 n. 13 (holding a suit for injunctive relief barred by the AIA because "[s]o long as the imposition of a federal tax, without regard to its nature, follows from the [IRS's] withdrawal of § 501(c)(3) status, [injunctive relief is barred and] a refund suit following the collection of that tax is an appropriate vehicle for litigat[ing] the legality of the Service's actions under § 501(c)(3).").

In *CIC Services, LLC v. Internal Revenue Service*, the Supreme Court distinguished suits seeking to interfere with tax collection from those challenging onerous transaction-reporting rules whose violation prompted tax penalties. 593 U.S. at 216–225. *CIC* involved a challenge to IRS Notice 2016–66. *CIC*, 593 U.S. at 209. The Notice did not directly impose a tax. *CIC*, 593 U.S. at 209. Rather, it required taxpayers and tax advisors to report information about certain insurance agreements known as micro-captive transactions,[11] which carried tax advantages and which the IRS believed insurance companies were abusing to avoid taxes. *CIC*, 593 U.S. at 209, 213. A taxpayer or tax advisor's failure to comply with the reporting requirements

---

[11] "A micro-captive transaction is typically an insurance agreement between a parent company and a 'captive' insurer under its control. The [Tax] Code provides the parties to such an agreement with tax advantages." *CIC,* 593 U.S. at 213.

could subject it to civil penalties and criminal prosecution. *CIC*, 593 U.S. at 214. The civil penalties were characterized as taxes. *CIC*, 593 U.S. at 214.

The *CIC* plaintiff, a tax advisor to taxpayers participating in micro-captive transactions, sued the IRS, seeking to enjoin the Notice because it was issued without notice-and-comment procedures in violation of the APA. *CIC*, 593 U.S. at 214–15. The *CIC* defendant claimed that the suit was barred by the AIA because what the suit fundamentally sought to enjoin was *taxes* associated with the reporting requirement. *CIC*, 593 U.S. at 215. However, the Supreme Court found that this type of suit—one challenging a rule requiring the reporting of transactions that the IRS intended to scrutinize for potential tax violations, which rule was enforced upon threat of a tax penalty—was distinct from a suit challenging the assessment or collection of a tax liability. *CIC*, 593 U.S. at 223–25.

First, the Plaintiff challenged only the reporting requirement, not the tax that flowed from it. *CIC*, 593 U.S. at 220 ("So in bringing this suit, CIC challenges a regulatory mandate that (1) is not a tax and (2) entails compliance costs whose amount is not tied to, and often goes beyond, any tax.").

Second, any tax ultimately assessed based on the reported transactions was attenuated from the mandate. *CIC*, 593 U.S. at 220. The mandate simply required that companies report certain transactions. *CIC*, 593 U.S. at 220. If the IRS reviewed the transaction, and if the IRS determined that the

28

transaction was wrongly characterized as exempt, only then would the tax on the transaction be levied. *CIC*, 593 U.S. at 209–210 ([I]t is hard to characterize [this] suit as one to enjoin a tax when CIC stands nowhere near the cusp of tax liability.").

Third, the "tax" imposed for violating the mandate was not one the plaintiff could simply pay and recoup later through a refund suit unless the plaintiff first broke the law and risked criminal penalties, because the "tax" was not levied unless the law was violated. *CIC*, 593 U.S. at 221–22. In other words, no alternative relief (in the form of a refund suit) was available unless plaintiff willfully violated the law. *CIC*, 593 U.S. at 221–22.

In sum, the Supreme Court found that the suit was not prohibited by the AIA, because it was not "for the purpose of restraining the [IRS's] assessment of collection of a tax" but, rather, "contest[ed], and s[ought] relief from, a separate legal mandate; the tax appears on the scene—as criminal penalties do too—only to sanction that mandate's violation."[12] *CIC*, 593 U.S. at 223, 226.

---

[12] Following the Supreme Court's decision in *CIC*, the Eleventh Circuit has recognized that, in the wake of the decision, courts have found that challenges to other IRS notices that required taxpayers to disclose their participation in certain transactions (upon threat of monetary penalty for failure to do so) were not barred by the AIA. *Green Rock Inc. v. Internal Revenue Service*, 104 F.4th 220, 224 (11th Cir. 2024) (reaching the merits of a plaintiff's challenge to an IRS notice that required taxpayers to report participation in transactions involving donations of real property to conservation organizations).

Here, the Court must begin by examining the allegations and requested relief in the Amended Complaint to determine the purpose of this lawsuit. *CIC*, 593 U.S. at 217–218. Plaintiffs claim that they seek to enjoin a rule they call the "Byers Rule," which Plaintiffs allege is essentially a reporting rule promulgated arbitrarily by the IRS in violation of the APA's notice-and-comment requirement. Am. Compl. (Doc. 17) ¶ 43. Plaintiffs describe their requested relief as, *inter alia*, a declaration that the "Byers Rule" is "unlawful," should be "vacat[ed]," and "injunctive relief prohibiting . . . IRS from enforcing the Byers Rule" Am. Compl. (Doc. 17) p. 24; *compare CIC*, 593 U.S. at 218 (noting Plaintiffs requested "setting aside" the notice, "enjoin[ing] the enforcement" of the notice "as an unlawful IRS rule," and "declaring that [the notice] is unlawful."). But, upon further examination, it appears that this is an "artfully pled" action to enjoin tax collection and is thus barred by the AIA and DJA. The "Byers Rule" is, in fact, merely the IRS's determination that the Adminicor ESOP does not qualify for tax exemption and the resulting requirement that Plaintiffs pay back taxes associated with the Adminicor ESOP, i.e., an assessment of and attempt to collect taxes. It is not a broader "rule" simply because the IRS allegedly made the same determination about similarly situated ESOPs.

The Amended Complaint describes the "Byers Rule" as one imposing new "requirements" on ESOPs, such as "retroactive form 1041 filings," and new

regulations governing the qualification of ESOP appraisers, the repayment of loans, and the limitations on non-cash stock sales. Am. Compl. (Doc. 17) ¶ 38. Plaintiffs further allege that the "Byers Rule" imposes criminal penalties, because a failure to file a Form 1041 (U.S. Income Tax Returns for Estates and Trusts) may result in criminal penalties (as all failures to file required taxes might). Am. Compl. (Doc. 17) ¶ 38; *see also* 26 U.S.C. § 7203. But although Plaintiff's pleading attempts to mimic the *CIC* complaint, the purported "Byers Rule" is a far cry from the notice challenged in the *CIC* action.

First, Plaintiffs here challenge their tax liability. In *CIC,* the notice the plaintiffs challenged was not a determination that they owed taxes, but a requirement that the taxpayers "collect and submit detailed information," about suspect transactions, which might or might not be reviewed and which might or might not be subject to a later determination that they are taxable, *CIC*, 593 U.S. at 220. Here, the requirements allegedly imposed by the "Byers Rule" are simply preexisting requirements for an ESOP to qualify for tax exemption under 26 U.S.C. § 401. *See* 26 U.S.C. § 6012(a) (requiring corporations, trusts, and individuals with certain income thresholds to file tax income returns); 26 U.S.C. § 401(a)(3) (requiring an ESOP to satisfy the requirements of Section 410(a)(1)(A)(ii), which says that the plan cannot condition participation in the plan on more than one year of service); 26 C.F.R. § 1.170A-13(c)(5) (excluding from the definition of qualified appraiser "A party

31

to the transaction in which the donor acquired the property being appraised (*i.e.,* the person who sold, exchanged, or gave the property to the donor, or any person who acted as an agent for the transferor or for the donor with respect to such sale, exchange, or gift)"); 26 C.F.R. § 1.401-1(b)(2) (requiring the employer or employees to make recurring and substantial contributions to the ESOP); 26 U.S.C. § 401(a) and 26 C.F.R. § 1.401-1(a)(2) (requiring a plan to follow its written terms); 26 U.S.C. §401(a)(28)(C) (requiring valuations of employer securities which are not readily tradable on an established securities market to be done by an independent appraiser that meets certain requirements similar to the requirements of the regulations prescribed under section 170(a)(1)).

What Plaintiffs truly challenge—and what is truly represented in the August 9, 2023 Form 886-A, the January 12, 2024 Final Non-Qualification Letter, and the January 21, 2021 Notices of Deficiency—is the IRS's determination that the Adminicor ESOP has not followed those requirements, is therefore not tax-exempt, and thus must file Form 1041s (pay back taxes and penalties) for the years in which they did not do so. Doc. 17-1 p. 57–58 (concluding the Adminicor ESOP "is not qualified under I.R.C. § 401(a) effective July 31, 2011 and all subsequent years" and instructing the Adminicor ESOP to file Form 1041 (U.S. Income Tax Returns for Estates and Trusts) and pay the consequential taxes and penalties).

If the Court were to vacate the "Byers Rule," as Plaintiffs request, the direct result would be that the IRS would be unable to assess taxes against and collect taxes from Plaintiffs. Thus, just like the university's challenge to its tax-exempt status in *Bob Jones*, this lawsuit seeks to restrain the assessment and collection of unpaid taxes.

Next, the Supreme Court found it significant in *CIC* that the challenged "Notice's reporting rule and the statutory tax penalty [we]re several steps removed from each other." *CIC*, 593 U.S. at 220–21 (explaining CIC must fail to report the required information, the IRS must decide that CIC has violated the rule, the IRS must further decide to impose a tax penalty, and "if and only if all those things occur does tax liability attach."). But here, the documents Plaintiffs challenge expressly deem Plaintiff to owe taxes, explain why, and instruct them to file. Doc. 17-1 p. 57–58. Unlike *CIC*, which "st[ood] nowhere near the cusp of tax liability," *CIC*, 593 U.S. at 209–10, when it sued the IRS, the IRS's determination of Plaintiffs' tax liability prompted this action and is its direct target. Am. Compl. (Doc. 17) ¶¶ 34, 35.

Finally, Plaintiffs equate this case to *CIC* by asserting that failure to follow the "Byers Rule" (i.e. file taxes), like failure to follow the *CIC* notice, carries a criminal penalty. *See CIC*, 593 U.S. at 221; Am. Compl. (Doc. 17) ¶ 38. Again, in *CIC*, no civil or criminal penalty could be levied against the plaintiffs unless they broke the law by violating the Notice's reporting

33

requirements. Thus, the Supreme Court explained, the *CIC* plaintiffs had to file a pre-enforcement suit rather than a refund suit, because the plaintiffs in *CIC* could not incur the penalty and then seek a refund without first violating the law and risking criminal punishment. *CIC*, 593 U.S. at 223. But here, the "criminal penalty" that Plaintiffs cite is merely the fine and imprisonment imposed for willful failure to pay taxes and file tax returns. Am. Compl. (Doc. 17) ¶ 38 (citing 26 U.S. Code § 7203). Should Plaintiffs file the tax returns and pay the taxes they claim are invalid, they would face no criminal penalty and could then file a refund suit. 26 U.S.C. § 7203. So, unlike in *CIC*, finding that the AIA bars this action does not force Plaintiffs to risk incrimination before seeking review.

Having rejected Plaintiffs' attempt to claim parity with the plaintiff in *CIC,* the Court nevertheless notes that there are two narrow, judicially crafted exceptions to the AIA. The first exception to the AIA was established by the Supreme Court in *Enoch v. Williams Packing and Navigation Company*, 370 U.S. 1 (1962). There, the Supreme Court stated that injunctive actions could proceed, despite the AIA's prohibition on them, when a plaintiff can show *both* that "under no circumstances could the Government ultimately prevail" and that "equity jurisdiction otherwise exists." *Williams Packing*, 370 U.S. at 7. In analyzing the first factor, the Supreme Court explained that a court must determine, "on the basis of the information available to [the Government] at

34

the time of [the] suit," whether, "under the most liberal view of the law and the facts, the United States cannot establish its claim . . . ." *Williams Packing*, 370 U.S. at 7. Plaintiffs do not appear to argue this exception applies here, and, even if they did, they would not succeed, because, as further described in the discussion of Defendant's 12(b)(6) argument, Defendant can prevail. *See also Daines v. Internal Revenue Serv.*, No. 24-CV-1057, 2026 WL 1216053, at *1 (E.D. Wis. May 4, 2026) (ruling in favor of the IRS on their motion to dismiss in an action that, like this one, challenged the purported "Byers Rule").

The Supreme Court discussed the second exception to the AIA in *South Carolina v. Regan*, 465 U.S. 367 (1984). There, South Carolina sought to invalidate the part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) that would require its citizens to pay taxes on state-issued bearer bonds. *Id.* at 370. The Supreme Court permitted the suit to proceed despite its aim to enjoin the collection of taxes, reasoning that the AIA did not foreclose actions "where . . . Congress has not provided the plaintiff with an alternative legal way to challenge the validity of [the] tax." *Id.* at 373. South Carolina could not pay the taxes and then file a refund suit under § 7422 to challenge the tax provision, because the State did not purchase the bonds, its citizens did. *Regan*, 465 U.S. at 380. "Because it is by no means certain that [South Carolina] would be able to convince a [third-party] taxpayer to raise its claims, reliance on [a refund suit by a third party] would create the risk that the Anti-Injunction Act

35

would entirely deprive the State of any opportunity to obtain review of its claims." *Regan*, 465 U.S. at 380–81.

Plaintiffs claim that the *Regan* exception applies here because they have no alternative remedy. They argue, "[N]o Notice of Deficiency has issued [for the years 2011 to 2018], no Tax Court petition is possible, and compliance with the Form 1041 mandate under criminal sanction is the only alternative." Doc. 23 p. 35. But, again, if they wish to challenge their tax liability, Plaintiffs may simply determine their alleged tax liabilities for the relevant years, as the Final Non-Qualification Letter invites them to, and, upon payment of those liabilities, file a refund suit pursuant to 26 U.S.C. § 7422. *See Maze v. Internal Revenue Serv.*, 206 F. Supp. 3d 1, 20 (D.D.C. 2016), *aff'd,* 862 F.3d 1087 (D.C. Cir. 2017) (rejecting argument that a notice of deficiency is a prerequisite to a refund suit). "Although, for understandable reasons, such a procedure might not be [Plaintiffs'] preferred course, this is not sufficient to invoke the *Regan* exception to the applicability of the AIA." *Rueda v. Yellen*, No. CV ELH-20-1102, 2022 WL 684143, at *20 (D. Md. Mar. 7, 2022), *aff'd,* No. 22-1584, 2023 WL 8271939 (4th Cir. Nov. 30, 2023).

Because the present lawsuit is designed to prevent the levying and collection of taxes, the AIA prohibits it. No judicial exception to the rule applies. And, "[b]ecause the federal tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the Anti–Injunction Act, [this]

36

holding also forecloses [Plaintiffs] from seeking declaratory relief." *Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1362 n. 6 (11th Cir. 2003).

Because Plaintiffs' claims are prohibited by both the AIA and DJA , this lawsuit does not fall within the APA's waiver of sovereign immunity, and this Court does not have subject matter jurisdiction over the action.

## V.    Motion to Dismiss for Failure to State a Claim

Even if the Court had jurisdiction over this case, dismissal of Count I would still be warranted for the separate and independently sufficient reason that Plaintiff fails to state a claim.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not include "detailed factual allegations" in the complaint, the requirement to demonstrate the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

37

*Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), if it fails to state a claim. Importantly here, "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

a.  Count I, the Notice-and-Comment Claim

The APA permits lawsuits in which a "plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). One non-discretionary obligation is to publish notice of any proposed "legislative rule" an agency intends to adopt, allow the public to comment on the proposal, consider the comments, and issue a final legislative rule setting forth the basis and purpose of the legislative rule. 5 U.S.C. § 553(b)–(c). A legislative rule is one that substantively changes the regulatory regime by imposing new rights and duties *State of Tennessee v. Dep't of Educ.*, 104 F.4th 577, 607–09 (6th Cir.

38

2024) (quoting *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022)).

In Count I, Plaintiffs charge the IRS with violating 5 U.S.C. § 553 by failing to provide notice and the opportunity for comment on the "Byers Rule." Doc. 17 ¶¶ 45 –59. Plaintiffs argue that the "Byers Rule" is a "legislative rule" because it is "a directive imposing new reporting obligations (Form 1041) on a class of taxpayers, backed by § 7203 criminal penalties, with no statutory basis." Doc. 23 p. 15. Defendants move to dismiss this count, arguing that Plaintiffs fail to plead the existence of a "legislative rule" for which notice-and-comment procedures are required. Doc. 18 pp. 19–25.

The APA distinguishes between two broad categories of agency action: rulemaking and adjudication. Rulemaking is an agency's process for formulating a "rule," 5 U.S.C. § 551(5), which the court defines as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy," 5 U.S.C. § 551(4). The APA defines "adjudication" as any agency's process for formulating an "order," 5 U.S.C. § 551(7), which is a "final disposition" in a "matter other than rule making but including licensing," 5 U.S.C. § 551(6). In general, "Rulemaking scenarios . . . involve broad applications of more general principles rather than case-specific individual determinations." *Neustar, Inc. v. FCC*, 857 F.3d 886, 893-95 (D.C. Cir. 2017). An agency's individualized determination of a fact-

39

specific issue on a case-by-case basis constitutes an "adjudication" under 5 U.S.C. § 551(7), rather than a legislative rule. The IRS's decision in a specific case "is not . . . administrative rulemaking; it is a determination in a private, fact-bound case that does not attempt to create procedures of general application." *McGarry v. Sec'y of Treasury*, 853 F.2d 981, 986 (D.C. Cir. 1988); *see also Daines v. Internal Revenue Serv.*, No. 24-CV-1057, 2026 WL 1216053, at \*3 (E.D. Wis. May 4, 2026) (finding the IRS's decision to find an ESOP to not qualify for tax exemption to be an adjudication).

An adjudication does not become a rule even if it expressly claims to govern "similarly situated" non-parties. *Conf. Grp., LLC v. F.C.C.*, 720 F.3d 957, 965–66 (D.C. Cir. 2013); *Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1018 (D.C. Cir. 2016) (noting that the fact that an agency action governs a "large number" of similar cases "carries little weight" in deciding whether it is a rule or an adjudication); *see also NLRB v. Wyman*, 394 U.S. 759, 765-66 (1969) ("Adjudicated cases may and do, of course, serve as vehicles for the formulation of agency policies, which are applied and announced therein. . . . They generally provide a guide to action that the agency may be expected to take in future cases. . . . [T]hey may serve as precedents. But this is far from saying . . . that commands, decisions, or policies announced in adjudication are 'rules' in the sense that they must, without more, be obeyed by the affected public.").

40

Next, not all "rules" are "legislative rules" (the only "rules" for which an agency is required to publish notice and solicit and consider comments). The APA defines a "legislative rule" only in the negative: it is a "rule"[13] that is not an "interpretative rule[ ], general statement[ ] of policy, or rule[ ] of agency organization, procedure, or practice." 5 U.S.C. § 553(b); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Legislative rules "impose new rights or duties and change the legal status of regulated parties," thereby effecting a substantive regulatory change to the statutory regime. *State of Tennessee v. Dep't of Educ.*, 104 F.4th 577, 607–08 (6th Cir. 2024) (quoting *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022)); *see also Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 241 (5th Cir. 2023) (citation omitted) (Legislative rules "bind the public and courts in a manner indistinguishable from a statute"). An "interpretive rule" (for which no notice-and-comment is required), in contrast, "advise[s] the public of the agency's construction of the statutes and rules which it administers" without itself creating new law. *Perez*, 575 U.S. at 97. While legislative rules "create[] new law, rights, or duties," interpretive rules "only remind[] affected parties of existing duties." *Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009) (citation omitted).

---

[13] Again, under the APA, a "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4).

Here, Plaintiffs allege that the "Byers Rule" is a "legislative rule" because it "modifies existing obligations and liabilities under the Internal Revenue Code and IRS regulatory framework." Am. Compl. (Doc. 17) ¶ 52. Specifically, Plaintiffs complain that the "Byers Rule" imposes new duties on ESOPs, including "accelerating ESOP loan payoff[s] to one year," removing exemptions for ESOP loans, "mandating that an ESOP valuation advisor [is not independent] because he used pre-approved Byers documents," requiring ESOPs to file Form 1041s, and recharacterizing stock sales as donations. Am. Compl. (Doc. 17) ¶¶ 37–38.

To better understand these allegations, the Court turns to the Form 886-A that Plaintiffs allege "crystallize[s] in writing" the "Byers Rule."[14] Am. Compl. (Doc. 17) ¶ 11. There, the IRS articulates three reasons that the Adminicor ESOP failed to meet the requirements of Section 401 and, therefore, failed to qualify for favorable tax treatment.

First, the IRS found that the Adminicor ESOP violated the terms of IRC § 401(a)(3) (a pre-existing rule that requires ESOPs to satisfy the requirements of section 410, including section 410(a)(1)(A)(ii)'s requirement that an ESOP

---

[14] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

cannot condition participation in the plan on more than one year of service), because it required that an employee have five years of service before participating in the ESOP. Doc. 17-1 p. 58; 5 U.S.C. § 410(a)(1)(A).

Second, the IRS found that the Adminicor ESOP failed to make "recurring and substantial contributions out of profits" in violation of 26 C.F.R. § 1.401-1(b)(2) (which requires such) and failed to follow its own plan documents in violation of Section 401(a)(1) and 26 C.F.R. § 1.401-1(a)(2). Doc. 17-1 pp. 55–56, 58. The IRS noted that Adminicor had possibly contributed $20,000 to the plan in 2011 but had failed to make any contributions for tax years 2012 through 2021. Doc. 17-1 pp. 55–56. The IRS further noted that the Adminicor ESOP operation plan provided that Adminicor "shall make a contribution to [the Adminicor ESOP] in cash sufficient to pay any currently maturing obligations." Doc. 17-1 p. 56; *see* 26 C.F.R. § 1.401-1(a)(2). Thus, the possible contribution of $20,000 in 2011 should have been used to make payments on a $20,000 loan that was made from Adminicor to the Adminicor ESOP to allow the Adminicor ESOP to purchase company shares. Doc. 17-1 pp. 55–56. Adminicor's failure to make a cash contribution to repay the loan disqualified the plan from tax exemption, because Section 401(a) requires that the plan follow its written terms. Doc. 17-1 p. 56; *see also* 26 C.F.R. § 1.401-1(a)(2).

43

Third, the IRS took the position that the Adminicor ESOP was not entitled to preferential tax treatment because valuations of employer securities were not completed by an independent, qualified appraiser, as required by 26 U.S.C. §401(a)(28)(C) (a preexisting rule that mandates that an independent appraiser value the employer's securities that are not publicly traded) and 26 C.F.R. § 1.170A-13(c)(5)[15] (a preexisting rule that lists the minimum qualifications and requirements of the appraiser). Doc. 17-1 pp. 56–57. Additionally, the IRS found that Mr. Byers did not have the minimum qualifications required to serve as an appraiser pursuant to pre-existing Treasury Regulations that required an appraiser to have certain education and experience. Doc. 17-1 p. 57 (referencing the requirements set forth in 26 C.F.R. § 1.170-13 and 1.170-17(b)).

After making these findings, the IRS concluded that the Adminicor ESOP "is not qualified under 26 U.S.C. § 401 (a) effective July 31, 2011 and all subsequent years." Doc. 17-1 p. 57. It declared the Adminicor ESOP was not tax exempt and instructed the Adminicor ESOP to file Form 1041 (U.S. Income

---

[15] Plaintiff argues that, by applying the standards set forth in Section 170(a)(1) (i.e., Treasury Regulation § 1.170A-13(c)(5)(iv)(B)), which are applicable to charitable contributions, the IRS treated arms-length stock sales as "donations" subject to donor rules. Am. Comp. (Doc. 17) ¶ 38.iii. But Section 401(a)(28)(C) specifically defines term "independent appraiser" for purposes of ESOP valuation as "any appraiser meeting requirements *similar to* the requirements of the regulations prescribed under section 170(a)(1)" 26 U.S.C. § 401(a)(28)(C) (emphasis added).

Tax Returns for Estates and Trusts) for the "open" tax years, and pay the consequential taxes and penalties. Doc. 17-1 pp. 57–58.

Based on the Form 886-A, it is clear that the "Byers Rule" is not a "legislative rule," or indeed, a rule at all, but rather an application of existing rules to determine the tax status of the Adminicor ESOP. Specifically, the Form 886-A recites specific deficiencies in the Adminicor ESOP grounded in pre-existing statutory and regulatory requirements: the five-year participation condition in violation of 26 U.S.C. §§ 401(a)(3) and 410; the failure to make recurring and substantial contributions as required by 26 C.F.R. § 1.401-1(b)(2); the failure to follow its own plan documents as required by 26 C.F.R. § 1.401-1(a)(2); and the use of an appraiser who did not meet the independence and qualification standards of 26 U.S.C. § 401(a)(28)(C) and 26 C.F.R. §§ 1.170A-13 and 1.170A-17. Doc. 17-1 at 55–57.

The Form 886-A is addressed to Adminicor, specifically applies the existing statutory framework to Adminicor's particular facts, and reaches conclusions about Adminicor's particular plan. The fact that the IRS may have reached similar conclusions in audits of other Byers-associated plans does not transform the adjudication housed in the Form 886-A into a rule of general applicability. *Neustar*, 857 F.3d at 895.

And, while Plaintiff argues the "Byers Rule" creates a "new obligation" by requiring ESOPs to file Form 1041s, the Form 886-A makes clear that the

45

Adminicor ESOP needs to file a Form 1041 (tax return) only because it was found not to qualify for tax exemption. *See* 26 U.S.C. § 6012(a) (requiring a non-exempt ESOP to file tax income returns). Thus, the 1041 requirement is not a new obligation but a consequence of the disqualification determination.

In sum, the August 9, 2023 Form 886-A, the January 12, 2024 Final Non-Qualification Letter, and the January 21, 2021 Notices of Deficiency do not embody a "Byers Rule" but an adjudication not subject to notice-and-comment requirements. Because the Amended Complaint does not identify a legislative rule, Count I should be dismissed for failure to state a claim.

b. <u>Count II, the Arbitrary and Capricious Claim</u>

In Count II, Plaintiffs assert that the IRS acted arbitrarily and capriciously, in violation of the APA, when it departed from its prior position that the Adminicor ESOP was tax exempt and instead found (by applying the "Byers Rule") that the Adminicor ESOP was not tax exempt and never had been. Doc. 17 ¶¶ 60–78. Plaintiffs claim that the APA required the IRS to provide a reasoned explanation for this reversal. *Id.*

Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). This standard "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Decisions must be reasonably explained when an agency changes its longstanding position.

46

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016). The Supreme Court, in *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29 (1983), articulated that a decision is not "reasonably explained" and, thus, arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." 463 U.S. at 43.

Here, Plaintiff pleads that, more than a decade after finding that the Adminicor ESOP qualified for tax exemption, the IRS found that the Adminicor ESOP did not, and never had, qualified. Am. Compl. (Doc. 17) ¶¶ 21, 65. It is not clear to the Court whether the documents Plaintiff attaches to support this proposition (*see* Doc. 17-4) conclusively show that the IRS initially reviewed all Plaintiffs' plan documents and determined that the Adminicor ESOP was tax-exempt. But, when the attachments do not disprove them, the Court must accept Plaintiffs' well-pleaded allegations as true.

And, while the Form 886-A provided an explanation for the IRS's finding that the Adminicor ESOP did not qualify for tax-preferred status (Doc. 17-1 pp. 55–57), it is not clear that the Form 886-A provided a reasonable

47

explanation for the alleged change in position on which Plaintiffs claim they relied for more than a decade.

Thus, although I respectfully recommend that the Court dismiss this claim (indeed, the lawsuit as a whole) on jurisdictional grounds, I do not find that Defendant's alternative 12(b)(6) argument provides an alternate basis for dismissal of Count II.

     c.  Count III, the Congressional Review Act Claim

As stated above, Plaintiffs do not contest the Court's dismissal of Count III. Doc. 23 p. 10. The Court, therefore, need not examine its merits.

## VI. Shotgun Pleading

Even if the Court had jurisdiction to hear it, Count II would require dismissal, because it embodies impermissible shotgun pleading.

"The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–21 (11th Cir. 2015) ("The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all

48

preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.").

A shotgun pleading does not comport with the pleading requirements of Rule 8 because it is not "a short and plain statement of the claim," and it does not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See* FED. R. CIV. P. 8(a)(2); *Iqbal*, 556 U.S. at 678; *see also Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). The Eleventh Circuit has instructed that a district court "must intervene . . . and order a replead[ing]" of a shotgun complaint, even if the defendant does not move for a more definite statement. *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001).

Here, Counts II and III "incorporate by reference [all] foregoing paragraph[s] . . . as if fully set forth herein." Doc. 17 ¶¶ 60, 79. Because the Amended Complaint is a shotgun pleading, it could not carry this case forward on these counts even if the Court had jurisdiction over viable claims pleaded therein.

## VII.   Conclusion

For the reasons stated, I respectfully RECOMMEND that the Court (1) grant Defendant's motion to dismiss (Doc. 18) pursuant to Rule 12(b)(1), because this Court lacks jurisdiction over this lawsuit, and (2) direct the Clerk to terminate all pending motions and deadlines and close the case.

Alternatively, should the Court find it has subject matter jurisdiction over this action, I recommend that the Court dismiss Count I for failure to state a claim, dismiss Count II because it is a shotgun pleading that fails to comply with the federal rules, and dismiss Count III because Plaintiffs consent to its dismissal.

SUBMITTED for consideration on August 5, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.